BANCO COMERCIAL DE PUERTO RICO, PETITIONER, *v.* DISTRICT JUDGE OF SAN JUAN, RESPONDENT.

PETITION for a Writ of Certiorari to the Judge of the District Court of San Juan in Receivership Proceedings.

No. 337.—Decided December 15, 1921.

CERTIORARI—APPEAL.—When an appeal is not as speedy and effective as the circumstances demand, a writ of certiorari will be granted.

RECEIVERSHIP—PREFERRED CREDITS—DEFERMENT OF PREFERRED CREDITS.—In this case a sugar-manufacturing corporation was placed under a receivership and all of the creditors deferred their preferred credits for the purpose of negotiating a loan of $25,000 in order to save the life of the corporation. At the end of the grinding season then in progress the corporation was found to be in debt and the receiver asked authority of the court to issue new preferred certificates for the sum of $59,366.90 for the expenses of the next season. A mortgagee objected to the deferment of his credit, but agreed to a loan of not more than $30,000, to be secured by the output, confining his preference to the corpus of the property. An order granting without limitation the authority asked for by the receiver was reviewed by certiorari and it was *Held:* That the preference of the mortgagee could not be deferred against his express objection, there being no applicability, under the circumstances of this case, of the jurisprudence authorizing the courts to order the deferment of guaranteed credits and the payment of debts contracted by the receiver for the continuation of a business whose termination would create great loss.

The facts are stated in the opinion.

*Mr. J. Sifre, Jr.,* for the petitioner.

*Mr. J. H. Brown* for the receiver.

*Mr. H. G. Molina* for the intervenors.

The respondent did not appear.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is a petition for a writ of certiorari presented by the Banco Comercial de Puerto Rico praying that this court

review and set aside a certain order made by the District Court of San Juan, First District, in a receivership case and authorizing the issuance of preferred certificates over the objection of the mortgagee. The writ was issued. The original documents were brought up to this court and at the hearing on December 5, 1921, the petitioner and the receiver appeared by their respective attorneys who argued in support of their contentions. Intervenor Melchior, Armstrong & Dessau, Inc., a junior mortgagee, also appeared by an attorney and acquiesced in the prayer to set aside the said order. The receiver objected, but did not move for a continuance of the hearing and the said intervenor was allowed to take part in the hearing.

The facts are briefly as follows: On May 10, 1921, the District Court of San Juan, at the petition of the Banco Comercial de Puerto Rico, a mortgagee of the private sugar-manufacturing corporation Central Bayaney, appointed Ramón Soler as receiver of the said corporation.

Three days thereafter the receiver was authorized to negotiate a loan of $25,000 secured by certificates preferred to all other liens, including the mortgages. The mortgagees gave their consent, the loan was negotiated and the mill of the central continued to grind its cane until the end of the season.

Soler having ceased to act as receiver, the court appointed Jorge E. Saldaña to substitute him. After studying the situation the new receiver asked the court for authority to negotiate a loan of $59,366.90, secured by certificates to be issued in the manner and under such conditions as the court might direct, in order to finance the central through the grinding season of 1922.

It appears from the record that the parties were summoned and also that the mortgagee Banco Comercial de Puerto Rico agreed that the receiver should be authorized to borrow $30,000 for the said purpose secured ''by certifi-

cates of debt signed by the receiver, which certificates shall have as a guarantee the industrial products of Central Bayaney, Inc., during the next crop and not the corpus of the property of this corporation."

It also appears from the record that on November 18, 1921, Melchior, Armstrong & Dessau, Inc., the intervenor in the proceedings, filed a paper which concludes as follows:

"The intervenor respectfully prays the court to refuse to order that the certificates issued by the receiver shall be preferred or shall operate as a lien on the property of the defendant which is mortgaged to the intervenor, in preference to the intervenor's mortgage."

Notwithstanding the opposition of the mortgagees, the district court authorized the negotiation of the loan secured by certificates, fixing the amount thereof at $30,000 and directing "that the said certificates shall constitute a preferred right and first lien on all the properties of the defendant within the Island of Porto Rico and with priority to the liens of the mortgages created by the defendant company in favor of the plaintiff corporation."

The statement of the foregoing facts is sufficient for a conclusion that this case should be decided in favor of the petitioner, in accordance with the jurisprudence laid down by this court in the case of *Sobrinos de Ezquiaga* v. *Rossy, District Judge,* 21 P. R. R. 369. In that case we said:

"Therefore, the questions raised and to be decided are as follows:

"Can a court change the terms of a contract voluntarily and validly entered into according to the statutes? Does the power which the courts have to appoint receivers in certain and particular cases carry with it the power to assume absolute control of the property placed in the possession of the receivers in such a manner that they may change the order of priority of the liens previously created upon the property by its owners?

"We have looked carefully into the law and it makes no provision on this point. We have considered jurisprudence likewise and do not find that such power has been exercised in cases similar to the one submitted for our decision.

"What security can a statute which clearly and conclusively insures the payment of a credit in a certain order of priority offer to the citizens of a country if a court, at is discretion, may afterwards change the contract in such manner as to make the security contracted for entirely illusory?

"To recognize such power in the judiciary in the absence of a prior and clear statutory provision would be to go against the fundamental principles upon which our system of government is founded.

"When a difficult situation arises in the business operations of a corporation and the interested parties are confident that such situation is transitory and can be overcome by a supreme effort, the interested parties themselves generally, on their own initiative, defer their rights in the hope of seeing them assume their full value in the future. This is why many cases occur in which recourse is had to the issuance of preferred receiver's certificates by judicial authority for the purpose of obtaining certain sums of money whose payment is specially guaranteed in order to confront the difficulties. But recourse has not been had, nor do we understand that it will be had, to such a measure when the interested parties themselves oppose it.

*       *       *       *       *       *       *

"There is an abundance of American jurisprudence on the subject and it establishes a well-defined distinction between the powers of a court when it intervenes in the administration of a quasi-public corporation and when it manages the business of a private corporation through receivers.

"In the case of *Hooper* v. *Central Trust Company of New York,* 29 L. R. A., 262, 263, the Court of Appeals of Maryland reached the following conclusion:

" 'Vested liens upon the property of individuals and private corporations cannot be displaced by means of receiver's certificates.'

"In the case of *Merriam* v. *Victory Min. Co. et al.,* 60 Pac., 997, the Supreme Court of Oregon held as follows:

" 'The right of the court appointing a receiver for a corporation to give priority of payment to unsecured debts over the lien of first mortgage bonds is restricted to creditors of railroads, which are public concerns, and cannot be exercised to give unsecured creditors of an ordinary corporation such preference over contract liens.' "

This court has consulted also several other cases decided

by American courts, but considers it unnecessary to cite them.

What has been said should be sufficient for a decision of this case, but by brief and in his argument at the hearing the receiver raised two questions which require the consideration of the court. He contended, 1st, that certiorari does not lie because the order sought to be set aside is appealable, and, 2nd, that according to the facts set forth in the petition itself, the said order is valid, and in any event the petitioner is estopped from attacking its validity.

The first question raised was impliedly disposed of also in the case of *Ezquiaga* v. *Rossy, supra,* but even if it could be concluded that the order referred to was appealable, inasmuch as under the circumstances attending this case an appeal would not be as speedy and effective as such circumstances demand, because the grinding season for which the money is needed should commence during the present month of December, 1921, certiorari is the proper remedy.

The second question is more complex. The receiver says in his brief:

"At the instance of the petitioner the receiver was appointed, not only to preserve, protect and take care of the properties of Central Bayaney, the defendant in the principal action, but also to carry on the business of the said defendant and to continue the enterprise to which the properties of the said defendant were devoted as a going concern."

Then he cites the jurisprudence as summed up by Ruling Case Law in the following manner:

"While the general rule as to the preservation of the existing rights of creditors is as above stated, there is no question but that a court of equity which has appointed a receiver to take charge of property and to care for and protect the same may decree the charges therefor as a prior claim and lien against the property paramount to all mortgages or other liens or incumbrances. The property becomes chargeable with the necessary expenses incurred taking care

of and saving it, including the allowance to the receiver for his services. He is the officer and agent of the court and not of the parties; and it is a right of the court essential to its own efficiency in the protection of things so situated to keep them under its control, until such expenses and allowances are paid or secured to be paid. Proper attorneys' fees, like other expenses of administration, take precedence over pre-existing liens on the funds; but they can be ascertained and allowed .only by the court that appointed the receiver. The appointment of a receiver and the taking of property into the hands of the court through its officer do not withdraw it from taxation. It remains subject to assessment and to the payment of all legal taxes thereon while in *custodia legis*, to the same extent as it was while in the possession of the owner. And whether or not such taxes be a lien or a debt by the laws of the government within whose jurisdiction the property is situated, such taxes are and should be regarded by the courts as a preferred and paramount claim over all other claims, except judicial costs. In addition to the above mentioned charges on property in the hands of a receiver which are conceded to have priority over other liens or incumbrances there is a sound equity which supports the doctrine that, when the nature of the property is such that the business to which it has been devoted cannot be discontinued without great probable loss, the court may authorize it to be continued by its officer and receiver, pending the closing up of the affairs of the insolvent corporation. Expenses incurred by a receiver under such circumstances may be justly said to be expenses of preservation for the benefit of bondholders or other persons entitled to share in the final distribution which ought to be first paid. The courts have also assumed to go still further and to adjudge priority of payment of debts contracted by a failing corporation within a few months prior to its adjudged insolvency for labor, supplies, and necessary current expenses incurred in the struggle to keep itself alive. It has been held, however, that when the Legislature has indicated the class of creditors whose claims shall be preferred the court is deprived of power to extend the preference to another class. The power of a receiver to issue certificates giving priority over existing liens is treated elsewhere in this article.'' 23 R. C. L., 109–110.

In applying the foregoing jurisprudence it is necessary to consider the facts of each case. Here a receiver was ap-

pointed and all of the creditors deferred their preferred credits for the purpose of negotiating a specific transaction —the first loan of $25,000—in order to save the life of the corporation. But at the end of the grinding season then in progress the corporation was in debt and it is now sought to commence the new grinding season under the same receivership. A different situation presents itself and then the interested parties agree to a continuation of the existing conditions, with certain limitation. The mortgagee is willing to restrict his security to the corpus of the property, consents to the negotiation of a loan of $30,000 with a preferred security on the products and maintains that if this is not possible, if the products themselves are not sufficient to pay the cost of their production on the basis that the greatest expense is already paid, then the receivership should terminate. And in our opinion the position of the mortgagee is entirely correct and the jurisprudence cited can not be invoked to destroy necessarily its preference consecrated by the will of the interested parties as stated in a contract with all the formalities of law.

As regards the argument that the petitioner, on account of being the creditor who asked for the appointment of the receiver, is estopped from objecting to the order of the court, we will say that although we are inclined to decide the question in the negative (*Smith* v. *Shenandoah Valley National Bank*, 246 Fed. 379), it is not necessary to express our opinion, inasmuch as another mortgagee, who had not applied for a receivership, appeared at the hearing and formally and seasonably opposed the authorization to borrow $30,000 for the new grinding season on security preferred to the mortgages.

For all of these reasons the order of November 18, 1921, is set aside in so far as it directed that the loan of $30,000 which the receiver was authorized to negotiate should con-

stitute a lien prior to the liens of the mortgages existing on the properties of Central Bayaney.

*Order set aside in part.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.